**Leopold SIAO–PAO, Plaintiff,**

v.

**Superintendent William MAZZUCA, Defendant.**

No. 05 Civ. 3381(VM).

United States District Court, S.D. New York.

Aug. 2, 2006.

Leopold Siao-Pao, Beacon, NY, pro se.

## DECISION AND ORDER

MARRERO, District Judge.

Petitioner Leopold Siao–Pao ("Siao–Pao"), who is currently incarcerated at the Fishkill Correctional Facility in Beacon, New York, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his denial of parole on August 29, 2001, by the New York State Parole Board (the "Parole Board" or the "State") violated his rights under the United States and New York Constitutions. For the reasons set forth below, his petition is denied.

## I.  BACKGROUND[1]

### A.  UNDERLYING CRIME

On September 26, 1981, Siao–Pao stabbed and killed 38–year–old Patrick Kehn ("Kehn") while robbing him and a companion in Manhattan's East River Park. On August 24, 1982, pursuant to a plea agreement, Siao–Pao was sentenced to 18 years to life on second-degree mur-

---

1.  The following factual summary derives from the parties' representations contained in the following submissions and any exhibits attached thereto: *Petitioner's Affidavit in Support of Habeas Corpus Petition,* dated January 3, 2006; *Petitioner's Memorandum of Law in Support of Habeas Corpus Petition,* dated January 3, 2006; *Respondent's Memorandum of*

*Law in Opposition to Petition for a Writ of Habeas Corpus,* dated December 15, 2005; and *Declaration in Support of Motion to Dismiss Habeas Corpus Petition Pursuant to 28 U.S.C. § 2254(b)(1),* dated December 15, 2005. Except where specifically quoted or otherwise cited below, no further reference to these documents will be made.

der charges and 8 1/3 to 25 years for first degree robbery, with the two sentences to run concurrently.

Siao–Pao's minimum 18–year sentence expired in 1999. Since that time, he has applied for parole four times: in August 1999, August 2001, August 2003, and August 2005. Each time, the Parole Board has denied his application. The 2001 parole denial is challenged in the present action.

## B. *THE 2001 PAROLE DENIAL*

Before reaching its decision to deny Siao–Pao parole in 2001, the Parole Board conducted a hearing, in which Siao–Pao expressed remorse for murdering Kehn. Siao–Pao also told the Board that he had a job waiting for him at his sister's restaurant upon his release, that he has never had a substance abuse problem, that prior to the murder he had a small criminal record, and that he had worked in the prison's law library for the previous two years.

Siao–Pao's prison records show that he has been disciplined ten times in 23 years. Siao–Pao claims that none of the infractions involved violence or drugs. Moreover, a mental health report prepared for the Parole Board gave Siao–Pao high marks overall and concluded that he had no violent tendencies.

Nonetheless, at the conclusion of the 2001 hearing, the Parole Board denied Siao–Pao parole and issued the following opinion:

> After a careful review of your entire record and this interview, parole is denied due to the serious nature and circumstances of the I.O.'s [instant offenses]—Murder–2 and Robbery–1 wherein records indicate that during the cause of a robbery you stabbed your victim causing his death. This violent criminal behavior demonstrates a pro-pensity for extreme violence and a depraved indifference for human life. All factors considered militate against discretionary release by this parole panel.

Since New York prison regulations provide for biannual parole applications, Siao–Pao was barred from re-seeking parole until August of 2003. He was subsequently denied parole again in 2003 and 2005.

## C. *APPEALS OF THE 2001 PAROLE DENIAL*

Siao–Pao's appeal of the Parole Board's 2001 decision was denied by the Parole Board's Appeals Unit on April 15, 2002. In February of 2002, Siao–Pao sought relief through an Article 78 proceeding in New York State Supreme Court, arguing that the Parole Board violated his due process rights when it made its decision without taking into account all of the factors it is statutorily required to consider under New York Executive Law ("N.Y.Exec") § 259–i. The New York Supreme Court rejected this argument in an opinion dated August 19, 2002, finding that "the Parole Board considered the statutory factors, and its determination was not irrational, arbitrary or capricious." (*See In the Matter of Siao–Pao v. Travis*, New York County, Index No. 401502/02, attached as Respondent's Exhibit E at 6.)

Siao–Pao appealed the Supreme Court's decision, but on March 4, 2004, the Supreme Court, Appellate Division (the "Appellate Division") unanimously dismissed the appeal as moot. *See In re Siao–Pao v. Travis*, 5 A.D.3d 150, 772 N.Y.S.2d 511 (App.Div. 1st Dep't 2004). The Appellate Division reasoned that even if Siao–Pao prevailed on the merits, the only relief the court could provide was another parole hearing. Since Siao–Pao had already had another hearing in August of 2003, the Appellate Division resolved that there was

no more it could do. *Id.* at 512. The Appellate Division concluded that "in any event, we find that the Board properly considered the factors set forth in Executive Law § 259–i." *Id.*

Without comment, the New York Court of Appeals denied Siao–Pao's motion for leave to appeal the Appellate Division's decision. *See Matter of Siao–Pao v. Travis,* 3 N.Y.3d 603, 782 N.Y.S.2d 697, 816 N.E.2d 570 (2004).

On March 9, 2005,[2] Siao–Pao, acting *pro se,* petitioned this Court for a writ of habeas corpus to overturn his denial of parole on due process grounds, arguing that: (1) the Parole Board's decision was arbitrary because it failed to weigh all of the factors it is required to consider under New York law; (2) the Parole Board improperly relied on faulty information in making its decision; and (3) the Parole Board failed to adequately explain its reasons for denying Siao–Pao parole, as required under New York law. The State counters that a habeas writ is improper in this case because Siao–Pao's claim is procedurally-barred, not cognizable on habeas review, and entirely without merit.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ As an initial matter, the Court is mindful that Siao–Pao is proceeding *pro se,* and that his submissions should thus be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (*quoting Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Moreover, when a plaintiff brings a case *pro se,* the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d

75, 79 (2d Cir.1996) (*quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Still, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

■ Siao–Pao alleges that the Appellate Division erred by not concluding that the Parole Board violated New York law when it denied his 2001 application for parole. This contention does not state a cognizable habeas claim, however, because it is emphatically not the role of federal habeas courts to re-examine state court determinations of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction [or denial of parole] violated the Constitution, laws, or treaties of the United States." *Id.* at 68, 112 S.Ct. 475 (*citing* 28 U.S.C. § 2241; *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975)). Nonetheless, because Siao–Pao brings this petition *pro se,* the Court liberally interprets his pleadings as alleging that the Appellate Division's decision violated his due process rights under the Fourteenth Amendment of the United States Constitution. *See* U.S. Const. Amend. XIV.

Federal habeas review of state court decisions is governed by the standard set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

**2.** Siao–Pao filed an amended petition on January 3, 2006.

merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■■■ A state court decision is "contrary to" established federal law if the state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme Court case but reaches an opposite result. *See Williams v. Taylor*, 529 U.S. 362, 405–6, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (citations omitted). A state court decision is an "unreasonable application" of established federal law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an existing principle to a context where it should be extended. *Id.* at 407, 120 S.Ct. 1495. Any factual determination made by the state court shall be presumed correct unless the petitioner can prove otherwise with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Before determining whether the Appellate Division's ruling upholding the Parole Board's decision survives AEDPA scrutiny, the Court must determine whether Siao–Pao has cleared the procedural hurdles for filing a habeas petition.

## B. *PRELIMINARY PROCEDURAL QUESTIONS*

### 1. *Timeliness*

Persons held in custody pursuant to state court judgments have one year in which to file a petition for habeas relief. *See* 28 U.S.C. § 2244(d)(1). The limitations period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). A judgment becomes final when a verdict has been rendered, the availability of appeal has been exhausted, and the time allotted for a petition of certiorari has expired. *See Teague v. Lane*, 489 U.S. 288, 295, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citations omitted).

The New York Court of Appeals denied Siao–Pao leave to appeal the Parole Board's decision on July 1, 2004. The one-year limitations period thus began to run on September 29, 2004, when the ninety-day period to apply for certiorari expired. Since Siao–Pao applied for habeas relief on March 9, 2005, his petition is timely.

### 2. *Exhaustion*

■■ A petition for habeas corpus may not be brought in federal court unless the petitioner has first either exhausted the remedies available in state court or demonstrated the absence of an effective state remedy. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir.2000) (*citing* 28 U.S.C. § 2254(b)(1)). A petitioner has exhausted a claim in state court when he has "'fairly presented' each federal claim to the highest state court." *Id.* (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)).

A New York inmate challenging denial of his parole exhausts his available remedies by filing an appeal with the Parole Board's Appeals Unit, petitioning state

court for Article 78 relief, and appealing a denial of Article 78 relief to the "highest state court capable of reviewing it." *Scales v. New York State Div. of Parole*, 396 F.Supp.2d 423, 428 (S.D.N.Y.2005) (*quoting Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir.2003)). Since Siao–Pao complied with this procedure, he has properly exhausted all available state remedies.[3]

### 3. *Mootness*

The Appellate Division dismissed Siao–Pao's appeal as moot, reasoning that when he was given a new parole hearing in August of 2003, he received all of the relief that the court could grant.

Interpreting his arguments liberally, Siao–Pao asserts that Appellate Division's reasoning should be rejected because it would allow New York to unconstitutionally deny him parole every two years without any federal court review. Since it normally takes more than two years to exhaust all available state remedies, Siao–Pao asserts that he would always be eligible for a new biannual parole hearing by the time a federal court could hear his habeas petition. Thus, Siao–Pao argues that every two years his petition for federal habeas relief would be denied on mootness grounds under the Appellate Division's reasoning. This practice would effectively allow New York to avoid any federal review of its parole decisions.

It is unclear whether the State accepts Siao–Pao's argument or instead urges the Court to adopt the Appellate Division's reasoning and deny Siao–Pao's petition on mootness grounds.[4]

The case law is not settled on whether a subsequent parole hearing renders moot a federal habeas petition to review an earlier parole denial. *See, e.g., Rodriguez v. Greenfield*, No. 99 Civ. 0352, 2002 WL 48440 at *4 (S.D.N.Y. Jan. 10, 2002) (holding that a challenge to 1998 parole denial was "academic" because of subsequent parole denials). *But see Defino v. Thomas*, No. 02 Civ 7413, 2003 WL 40502 at *3 (S.D.N.Y. Jan.2, 2003) (referring to an argument similar to Siao–Pao's as "potentially powerful").

Regardless, this Court need not decide whether Siao–Pao's petition has been rendered moot by his subsequent parole hearings. As this Court observed in *Brown v. Thomas*, No. 02 Civ. 9257, 2003 WL 941940 at *1 (S.D.N.Y. Mar.10, 2003), "in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit."

Since Siao–Pao's petition can easily be denied on the merits, this Court need not determine whether or not his petition is moot.

### 4. *Procedural Bar*

In general, a federal habeas court may not review a state court decision if the

---

**3.** Siao–Pao's State Court briefs could not be located. Thus, there is some question as to whether he raised his federal due process claims to the Appellate Division as required under the exhaustion doctrine. Because the State does not challenge Siao–Pao's petition on these grounds, the Court will assume that the federal claims have been properly exhausted in State court. Moreover, even if the federal claims were not raised to the Appellate Division and thus have not been exhaust-

ed, this Court may still dismiss them on their merits. *See* 28 U.S.C. 2254(b)(2).

**4.** In its memorandum of law, the State claims not to be raising a mootness defense. *See Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus* at 8 n. 5. Nonetheless, it argues on the same page that Siao–Pao's "claims have been made academic by the two subsequent parole hearings." *Id.* at 8.

holding "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Federal review is precluded only when the state court's decision explicitly and unambiguously relies on a procedural bar that derives from state law. *Fama,* 235 F.3d at 809–10. If the highest state court to consider a claim reaches its decision on the merits, then any bar to federal review is removed. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (*citing Harris,* 489 U.S. at 262, 109 S.Ct. 1038). An appeals court that affirms a lower court ruling without comment is presumed to have relied on the same grounds as the lower court. *See id.* at 803–04, 111 S.Ct. 2590.

The New York Court of Appeals denied Siao–Pao's leave to appeal without comment. *See Siao–Pao,* 782 N.Y.S.2d 697, 816 N.E.2d at 570. Thus, the grounds relied upon by the Appellate Division determine whether his habeas petition is procedurally barred. *See Ylst,* 501 U.S. at 803–04, 111 S.Ct. 2590. The Appellate Division explicitly relied on the doctrine of mootness in denying Siao–Pao's appeal. *See Siao–Pao,* 772 N.Y.S.2d at 511. However, neither the Appellate Division's opinion nor the cases it cited indicate that dismissal for mootness is a state procedural ground. Thus, Siao–Pao's petition is not procedurally barred, and this Court will now consider its merits.

## C. *MERITS OF DUE PROCESS CLAIM*

■ There is a high bar for challenging New York parole decisions on federal due process grounds because the State's parole statute does not create a legitimate expectation of release. *See Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). Inmates have a liberty interest in parole only if the state of their incarceration fosters an expectation of release by "establish[ing] a scheme whereby parole shall be ordered unless specified conditions are found to exist." *Id.* (*quoting Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979)). New York's scheme does not create a liberty interest in parole because it gives the Parole Board great discretion in deciding which inmates can be released. *See id.; see also* N.Y. Exec § 259–c(1).

Because New York inmates do not have a liberty interest in parole, Siao–Pao's due process rights are "limited to not being denied parole for arbitrary or impermissible reasons." *Boddie,* 285 F.Supp.2d at 428 (*quoting Brown,* 2003 WL 941940 at *1). As there is no evidence that Siao–Pao was denied parole for "arbitrary or impermissible reasons," his claim must fail.

The Parole Board is charged with granting parole:

> if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y. Exec § 259–i(2)(c)(A). In making this determination, the Parole Board is required to consider the following relevant factors:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;
>
> (ii) performance, if any, as a participant in a temporary release program;
>
> (iii) release plans including community resources, employment, education and

training and support services available to the inmate;

*Id.* Moreover, when, as here, the minimum sentence is imposed by a court, the Parole Board must consider:

(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and

(ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec § 259–i(2)(c)(A), and, by incorporation, *id.* § 259–i(1)(a).

Siao–Pao claims that his federal due process rights were violated because the Parole Board arbitrarily denied him parole based on a misapplication of state law. Specifically, he argues that the Parole Board considered only the seriousness of his crime and impermissibly ignored the other statutory factors, such as his impressive prison record, his release plans, and his nearly non-existent criminal record prior to the murder.

The record does not support Siao–Pao's argument. During Siao–Pao's interview prior to its 2001 decision, the Parole Board asked Siao–Pao about his release plans, his criminal history prior to the murder, and his achievements in prison. In its opinion, the Parole Board indicated that it had considered Siao–Pao's entire record but determined that the seriousness of his crime outweighed the factors favoring parole.

Under New York law, the Parole Board may accord each statutory factor "whatever weight it deems appropriate." *Davis v. Thomas,* 256 F.Supp.2d 190, 192 (S.D.N.Y.2003) (*citing Garcia v. New York State Div. of Parole,* 239 A.D.2d 235, 657 N.Y.S.2d 415, 418 (App.Div. 1st Dep't 1997)). Moreover, it "need not expressly discuss each of the reasons in its determination." *Id.* The Parole Board considered all of the required factors and accorded more weight to the seriousness of the underlying crime, which is "entirely consistent with the criteria laid down by the legislature." *Morel v. Thomas,* No. 02 Civ. 9622, 2003 WL 21488017 at *5 (S.D.N.Y. June 26, 2003) (*citing Thurman v. Hodges,* 292 A.D.2d 872, 739 N.Y.S.2d 324 (App. Div. 4th Dep't 2002)). There being no evidence on the record before the Court that the Parole Board relied on "arbitrary or impermissible reasons" for denying Siao–Pao parole, *Boddie,* 285 F.Supp.2d at 428, his federal due process claim is without merit.

Siao–Pao further argues that he was denied due process because the Parole Board's decision was based on the false information that he has a "propensity for extreme violence." *See* Parole Board's Decision of August 2001 *supra* at 3. Siao–Pao argues that his mental health examinations reveal no violent tendencies and thus the Parole Board erred in basing its decision on a non-existent "propensity." This argument fails because the "propensity for extreme violence" is not a factor relied upon by the Parole Board but a conclusion it drew based on the brutal murder Siao–Pao committed. Because the Parole Board is permitted to consider the seriousness of Siao–Pao's crime, it did not act arbitrarily by concluding that Siao–Pao has the potential for violence as demonstrated by the murder he committed.

Finally, Siao–Pao argues that the Parole Board violated his due process rights by

not sufficiently providing him with the reasoning behind its decision. Under New York law, when an inmate is denied parole, he "shall be informed in writing within two weeks of such appearance of the factors and reasons for such denial of parole. Such reasons shall be given in detail and not in conclusory terms." N.Y. Exec § 259–i(2)(a). However, whether the Parole Board fully complied with New York law is a question for the New York courts to determine. *See Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475. Federal habeas review of New York parole decisions is limited to the question of whether the Parole Board acted "for arbitrary or impermissible reasons." *Boddie*, 285 F.Supp.2d at 428. As the Court determined above, the Parole Board did not act arbitrarily. Accordingly, the Court need not consider the question of whether the Parole Board adequately complied with New York law in writing its decision. Thus, all of the grounds on which Siao–Pao bases his petition for habeas relief are without merit.

### III.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the petition of petitioner Leopold Siao–Pao for a writ of habeas corpus is DENIED.

As Siao–Pao has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.1997), abrogated on other grounds by *United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**